## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES, | § | | |
| | § | | |
| Plaintiff, | § | | |
| | § | | |
| v. | § | | |
| | § | | |
| ELBA LUZ DOMINGUEZ-PORTILLO, | § | Nos. | EP:17-MJ-04409 |
| MAYNOR ALONSO CLAUDINO LOPEZ, | § | | EP:17-MJ-04456 |
| JOSE FRANCIS YANES-MANCIA, | § | | EP:17-MJ-04461 |
| NATIVIDAD ZAVALA-ZAVALA, and | § | | EP:17-MJ-04462 |
| BLANCA NIEVE VASQUEZ-HERNANDEZ, | § | | EP:17-MJ-04499 |
| | § | | |
| Defendants. | § | | |

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND THE COURT'S NOVEMBER 2, 2017 ORDER

The Government hereby submits this response in opposition to the motion to dismiss filed by five defendants[1] and the Court's order dated November 2, 2017. The Government respectfully requests that the Court deny the Defendants motion and set these cases for arraignment.

## I. BACKGROUND

### A.    Facts

The following facts are taken from the criminal complaints and discovery in these cases. (*See, e.g.*, ECF No.[2] 6.) Ms. Dominguez is a citizen of El Salvador who left her country around

---

[1] At the status conference on November 1, 2017, the Court agreed to allow defense counsel to file a single, consolidated motion for all five cases. As discussed with the Court's staff, the Government is following that format in submitting this response, but maintains that it would be inappropriate to consolidate these cases.

[2] Docket entry citations refer to the docket in *United States v. Dominguez-Portillo*, No. EP:17-MJ-04409-MAT (W.D. Tex.), unless otherwise indicated. These citations are provided for ease of reference and the Government believes they are representative of the procedural history of all five cases.

October 14, 2017, traveling through Mexico and arriving in Ciudad Juarez, Mexico, on October 21, 2017.  United States Border Patrol apprehended Ms. Dominguez around 11:00 p.m. on October 21, 2017.  At the time, Ms. Dominguez was walking on the levee road, north of the Rio Grande River, approximately 3.89 miles east of the Bridge of the Americas Port of Entry.  She was apprehended with a juvenile that she claimed was her daughter whom she had brought with her on her journey from El Salvador.

Mr. Claudino is a citizen of Honduras.  He left the town of Naco, Honduras, around October 6, 2017, and traveled by bus to Ciudad Juarez, crossing the borders between Honduras and Mexico illegally in order to avoid detection along the way.  Border Patrol apprehended Mr. Claudino around 6:00 a.m. on October 23, 2017.  At the time, he was walking east on the levee approximately 4.6 miles east of the Bridge of the Americas Port of Entry.  He was apprehended with a juvenile that he claimed was his son whom he had brought with him on his journey from Honduras.

Mr. Yanes is a citizen of Honduras.  He left his country around September 23, 2017, traveling by bus and other means until he arrived in Ciudad Juarez around October 21, 2017.  After staying with an unknown man in Ciudad Juarez, he was apprehended by the Border Patrol with a group of fourteen individuals around 10:00 p.m. on October 22, 2017.  At the time, he had just crossed the Rio Grande River and was approximately 1.46 miles west of the Paso Del Norte Port of Entry.  One of the fourteen individuals was a juvenile whom Mr. Yanes claimed was his son whom he had brought with him on his journey from Honduras.

Ms. Zavala is a citizen of Honduras.  She left her country around August 23, 2017, traveling by bus and other forms of transportation until arriving in Ciudad Juarez around October 9, 2017, staying with strangers along the way.  She stayed with an unknown man in Ciudad Juarez before

being apprehended by the Border Patrol with the same group of fourteen individuals as Mr. Yanes

on October 22, 2017.  One of the fourteen individuals was a juvenile that Ms. Zavala claims is her

grand-daughter.  (*See* Transcript at 10:24-11:2, *United States v. Zavala-Zavala*, No. EP:17-MJ-

04462-MAT (W.D. Tex. Oct. 24, 2017), ECF No. 14.)

Ms. Vasquez is a citizen of El Salvador.  Border Patrol apprehended Ms. Vasquez around

10:00 p.m. on October 23, 2017.  At the time, she was walking on the levee approximately one

mile east of the Ysleta Port of Entry.  She was apprehended with a juvenile that she claimed was

her son.

### B.    Procedural history

The Defendants were arrested and charged with committing the criminal offense of

violating 8 U.S.C. § 1325(a)(1)—i.e., improper entry by an alien.  (*See, e.g.*, ECF No. 6.)  As a

result of the Defendants' arrests, the juveniles were processed as unaccompanied juveniles, *see* 6

U.S.C. § 279(g)(2),[3] and transferred to the custody of the Office of Refugee Resettlement ("ORR")

as required by law.  *See* 8 U.S.C. § 1232(b)(3) (requiring Government agencies to transfer custody

---

[3] Counsel for the Government cannot confirm that the Defendants are, in fact, related to the juveniles as they claim.  Many juveniles entering in this manner appear to lack identifying documents leaving Border Patrol unable to confirm their parentage.  *See* 6 C.F.R. § 115.14 (directing DHS to "seek to obtain reliable evidence of a family relationship" when "determining the existence of a family unit for detention purposes" as part of the regulations intended to prevent sexual abuse of juveniles).  The juveniles may have been deemed unaccompanied based on Border Patrol's lack of information concerning their parentage or in light of the fact that the Defendants were charged for their criminal conduct.  *See U.S. ex rel. K.E.R.G. v. Sec'y of Health & Human Servs.*, 638 F. App'x 154, 160 (3d Cir. 2016) (concluding that a juvenile was "properly designated as [an unaccompanied juvenile] and transferred into HHS's custody" where the adult accompanying her had no legal or biological relationship to her); *D.B. v. Cardall*, 826 F.3d 721, 746-47 (4th Cir. 2016) (Floyd, J., dissenting) (disagreeing with the majority's holding that having a parent that is considered unfit renders a juvenile "unaccompanied," but conceding that a juvenile with an incarcerated parent would be "unaccompanied").

of unaccompanied alien children to the Secretary of Health and Human Services "not later than 72 hours" after determining that the child is unaccompanied, absent exceptional circumstances).

ORR is charged with ensuring that the interests of juveniles are considered in decisions and actions relating to the care and custody of unaccompanied alien children.  6 U.S.C. § 279(b)(1)(B).  ORR has its own policies and procedures for placing children, reuniting them with their families, determining whether to release or detain them, and keeping their information confidential.  *See* ORR, *ORR Guide: Children Entering the United States Unaccompanied*, https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied   (last reviewed Oct. 30, 2017).  Specifically, Sections 1.7.4 and 2.1 of the ORR Guide set forth some of the policies and procedures ORR takes to ensure the care and safety of alien juveniles apprehended in the United States without a parent or legal guardian available to provide care and custody.  *Id.* ORR also has a process in place that allows ORR to find family members and others who may qualify to care for an unaccompanied juvenile as soon as the juvenile enters ORR's care.  *Id.* at §§ 1.7.4, 2.2.  ORR also makes it possible for individuals looking for an alien juvenile in ORR custody to make inquiries regarding the juvenile's placement.  *Id.* at § 1.5; *see also* ORR, *Office of Refugee Resettlement National Call Center*, https://www.acf.hhs.gov/orr/resource/orr-national-call-center (last reviewed Nov. 16, 2016).[4]

The Defendants were then brought before the Court for initial appearances on October 23, 24, and 26, 2017, where the Court appointed counsel to represent them and set bond at $5,000.

---

[4] Counsel for the Government's legal research has not revealed (and the Defendants have not cited) any statute or regulation which govern any process for the provision of information regarding the juvenile children of undocumented aliens charged with a petty misdemeanor such as illegal entry.  For a more general discussion of the Government's view of this area of the law, as set forth by the Department of Justice, Civil Division, Office of Immigration Litigation, *see generally* Respondents-Appellees' Response Brief, *Beltran v. Poston*, No. 15-1993 (4th Cir. Feb. 8, 2016), ECF No. 43.

(ECF No. 8.)  Pursuant to Rule 58(b)(2) of the Federal Rules of Criminal Procedure, an initial appearance on a misdemeanor charge such as improper entry generally involves the court informing the defendant of: the charge, the penalties, the right to retain counsel, the right to request appointed counsel, the right not to make a statement, the circumstances under which the defendant may secure pretrial release, and, for noncitizens, the right to request consular notification.  In addition to covering those subjects, the Court also asked of all the defendants whether any one of them was  accompanied by a "minor child or a minor sibling?"  (ECF No. 14 at 8:19-20.)  The Court then asked whether any such defendants were "provided any information as to how to find out about [their] whereabouts . . . or well-being?"  (ECF No. 14 at 9:12-17.)  The Court urged the Defendants to "discuss this" with their attorney, who "may be able to assist you in at least finding out some basic information."  (ECF No. 14 at 9:19-25.)[5]

As part of this discussion at his initial appearance, Mr. Claudino volunteered that Border Patrol had told him that his son could potentially be placed with Mr. Claudino's brother, who was living in Los Angeles.  (Transcript at 12:23-13:6, *United States v. Claudino Lopez*, No. EP:17-MJ-04456-MAT (W.D. Tex. Oct. 24, 2017), ECF No. 15.)  Ms. Zavala acknowledged that she was provided with "a piece of paper" but that she did not "know what the paper says."  (Transcript at 11:14-17, *United States v. Zavala-Zavala*, No. EP:17-MJ-04462-MAT (W.D. Tex. Oct. 24, 2017), ECF No. 14.)  Ms. Vasquez stated that she was told that her son would be taken to a facility for juveniles and that she was assured that her son "was going to be okay."  (Transcript at 8:7-22, *United States v. Vasquez-Hernandez*, No. EP:17-MJ-04499-MAT (W.D. Tex. Oct. 26, 2017), ECF No. 14.)  After Ms. Vasquez stated that she was "worried" about her son, the Court responded: "I

---

[5] The Government notes that the Defendants' admissions at their initial appearances to bringing other individuals is evidence that subjects them to criminal liability for committing the felony offense of bringing aliens to the United States under 8 U.S.C. § 1324(a)(1)(A)(i).

would be very worried as well if it was me.  I understand your worry and I understand your frustration." (*Id.* at 9:9-11.)  Although the Government recognizes that the Court was expressing empathy for the Defendants' circumstances and does not question the Court's impartiality on this motion, it observes that the Court may have spoken inartfully in further advising Ms. Vasquez that: "Your attorney is appointed to represent you on this charge.  But given that you have this concern, given that it can have an impact in your case as to whether you decide to plead guilty or not, since the government has your child, you can discuss this with your attorney and hopefully your attorney can give you some assistance, all right, in terms of being able to locate the child." (*Id.* at 10:13-18.)  The Court initiated a dialogue with the defendants at Ms. Vasquez's initial appearance in Spanish; which dialogue was not translated into English so that it could be made part of the Record. (*Id.* at 3:10-11.)

The Court then set the cases for a status conference on November 1, 2017.  (ECF No. 11.) At the status conference, the Court indicated that it was troubled by the circumstances of defendants in § 1325 cases who had been traveling with juvenile children or siblings and were unable to obtain information about them after being arrested.  The Court indicated that it had done its own research on the issue and recognized that it was a complex area, involving a number of laws and agencies.  The Court explained that it had asked CJA counsel to assist their clients to obtain information in those circumstances, but that it was difficult to get that information by the time most defendants in § 1325 cases would plead guilty.  The Court stated that it was concerned that the lack of information about the juveniles could impact the voluntariness of the Defendants' guilty pleas.  Thus, it indicated that it intended to issue an order outlining several issues that it wanted the parties to brief.

Defense counsel stated that he was aware of the Court's concerns and was ready to file a motion on the subject within a matter of days.  Defense counsel then agreed to await the Court's order, incorporate responses to the points in the order into the motion that he had drafted.  The Government requested the standard amount of time to respond to the motion under the Court's Local Rules, which the Court agreed to allow.  *See* Local Rule CR-47(b).

On November 2, 2017, the Court issued its order ("Order") outlining the issues it wished the parties to address in their motion and response.  (ECF No. 3.)  On November 7, 2017, the Defendants filed their motion to dismiss ("Mot.") these cases.[6]  (ECF No. 13.)  The Defendants have not offered any testimony or other evidence in support of their motion and have not requested a hearing in order to present any such evidence.  To date, the Defendants have not been arraigned or entered a plea.  The Government now responds.

## II.  DISCUSSION

The Government opposes the Defendants' unprecedented request for dismissal of these criminal cases based on unfounded claims of coercion concerning circumstances entirely unrelated to the underlying offenses.  If granted, the relief the Defendants request would have the disastrous effect of encouraging aliens to traffic or use children when making illegal entries into the United States.  To the extent that the Defendants are unable to plead voluntarily, their remedy is not dismissal, it is to go to trial.  Moreover, even if the Defendants had put forth any evidence supporting their claims of involuntariness, the family-related concerns and purported withholding of information that they allege, is not sufficient to render a plea involuntary under the law.  *Padilla v. Kentucky*, 559 U.S. 356 (2010), does not suggest otherwise.  Similarly, the Defendants' reliance

---

[6] The Government notes that the Defendants' motion did not comply with Local Rule CR-49(b)(1)(C)(i).

on Due Process is unavailing as they are being detained on criminal charges, with a bond set at $5,000, which is undoubtedly constitutional.  Furthermore, the civil *Flores* settlement and other materials concerning immigration detention relied upon by the Defendants do not bolster their claims as they do not confer any rights upon the Defendants and are plainly inapplicable in these criminal prosecutions.

> **A.     This is a criminal prosecution and the Court lacks jurisdiction over unrelated issues**

The Defendants have been charged with the crime of improper entry by an alien.  This Court has jurisdiction over these cases pursuant to 18 U.S.C. § 3231.  That jurisdiction does not extend to the Defendants' access to information concerning the juveniles with whom they were apprehended and other tangential issues.  *See United States v. Fazal-Ur-Raheman-Fazal*, 355 F.3d 40, 55 (1st Cir. 2004) (concluding that the district court had jurisdiction over a criminal defendant but did not have jurisdiction to issue orders concerning the custody of the defendant's children).

The issues relevant to these cases as charged are whether the Government can establish the elements of the offense and whether the Defendants have any defenses.  As the Court knows, the elements of improper entry are that the defendant: (1) was an alien; (2) who entered or attempted to enter the United States; and (3) entered or attempted to enter at a time or place other than as designated by immigration officers.  8 U.S.C. § 1325(a)(1).  The Government must also establish that venue is proper in the Western District of Texas.  *See* Fed. R. Crim. P. 18.  The Defendants do not appear to dispute any of the elements of the charge, nor do they appear to raise any defenses.  Rather, they implicitly concede that the elements are satisfied, repeatedly protesting that they do not wish to discuss the strength of the Government's case against them.  (Mot. 3, 13.)

Instead of raising any legitimate defense to these criminal prosecutions, the Defendants contend that the prosecutions are "premature."  (Mot. 3, 9-10.)  The Defendants appear to be

suggesting that they may be able to obtain asylum or some other form of status at some point in the future.  (*See* Mot. 8-10.)  However, even if they are able to obtain any such status, it does not change the fact that they were aliens at the time that they illegally entered the United States.  *See United States v. Jimenez-Alcala*, 353 F.3d 858, 861-62 (10th Cir. 2003) (indicating that "a noncitizen does not become a 'national of the United States' merely by residing in this country for a lengthy period of time, or by entering illegally and subjectively considering himself a person who owes permanent allegiance to this country").  Elsewhere, the Defendants concede that the alienage element is satisfied, referring to the United States as a "foreign country" to them.[7]  (Mot. 2.)

Instead of addressing the pending criminal charges against them, the Defendants request the extraordinary remedy of dismissal on the basis of various proclamations, most of which are based in civil caselaw and standards governing civil immigration detention. As discussed below, these arguments are unavailing.

**B.      There is no basis for dismissal**

The Defendants request the extraordinary remedy of dismissal of the criminal complaints against them without citing a single case or statute that supports their request.  Rule 12 of the Federal Rules of Criminal Procedure sets forth a number of bases for pretrial motions, such as a lack of jurisdiction, defects in institution the prosecution, or defects in the charging document.  *See* Fed. R. Crim. P. 12(b)(2), (b)(3)(A), (b)(3)(B).  These types of defects can result in dismissal.  The

---

[7] For the purposes of an illegal entry charge, an "alien" is any person who is not a citizen or national of the United States.  8 U.S.C. § 1101(a)(3).  A person can become a "national" only by birth or by completing the naturalization process.  *Omolo v. Gonzales*, 452 F.3d 404, 409 (5th Cir. 2006).  The Defendants admit to being from foreign countries and do not claim to have completed the naturalization process.  Moreover, even if the alienage element was not satisfied, criminal charges would still apply.  *See* 19 U.S.C. § 1459(a), (e), & (g).  Indeed, crossing the international boundary at a place that is not a port of entry is a crime.

Defendants' request, however, has no Rule 12 basis.  Instead, it appears to be based on their contention that if they plead guilty at some point in the future, it would be involuntary.  (*See* Mot. 12-13.)  In cases where the courts have found that a plea was involuntary, the remedy is that the involuntary guilty plea is void, the defendant may enter a new plea, and proceed to trial.  *See, e.g.*, *United States v. Anderson*, 468 F.2d 440, 443 (5th Cir. 1972).  The same is true with respect to a *Padilla* violation.  *See United States v. Urias-Marrufo*, 744 F.3d 361, 369 (5th Cir. 2014). Consequently, even if the Defendants' contentions about involuntariness and coercion were valid (which, as discussed below, they are not), their remedy would be to proceed to trial.[8]

Moreover, dismissing these cases on that basis could have the disastrous effect of incentivizing aliens to make illegal entries with juveniles in order to avoid prosecution, and thereby *encourage* the trafficking of children.  This would defy Congress's directives.  *See D.B. v. Cardall*, 826 F.3d 721, 738-39 (4th Cir. 2016) (noting that the relevant statutes and regulations in this area reflect Congress's "unmistakable" intention to protect alien children from trafficking and exploitation); *see also* 8 U.S.C. § 1232(c)(1) (directing various officials to "establish policies and programs to ensure that unaccompanied alien children in the United States are protected from traffickers and other persons seeking to victimize or otherwise engage such children in criminal,

---

[8] The Defendants conclude their motion by proclaiming that the Government's conduct is "outrageous!"  (Mot. 14.)  To the extent they are asserting that the Government has engaged in outrageous conduct warranting dismissal of the charges, their claim is without merit as they were "active, willing participant[s] in the criminal conduct that le[d] to [their] arrest."  *United States v. Posada Carriles*, 541 F.3d 344, 361 (5th Cir. 2008) (quoting *United States v. Asibor*, 109 F.3d 1023, 1039 (5th Cir. 1997)).  Indeed, the Government played no role in the Defendants' illegal entries or their decision to bring juveniles with them while making their journeys over the course of weeks and thousands of miles in order to illegally cross the Rio Grande River in the dark.  As noted above, although the Defendants are only currently charged with the misdemeanor offense of illegal entry, their admitted conduct satisfies the elements of the felony offense of alien smuggling, 8 U.S.C. § 1324(a)(1)(A)(i).

harmful, or exploitative activity, including policies and programs reflecting best practices in witness security programs.").

Unfortunately there are numerous examples of adults who posed as the parents of children that they were trafficking, smuggling, or using as props in an attempt to avoid prosecution.  *See, e.g.*, *United States v. Cabrera*, 288 F.3d 163, 166 (5th Cir. 2002) (discussing a smuggling scheme whereby the defendants "assisted individuals in illegally entering the United States from Mexico by paying parents to permit their children to accompany immigrants across the border" in an attempt to take advantage of a Border Patrol "policy of returning families with young children to Mexico rather than detaining them and charging them with illegal entry"); *Martinez De Martinez v. Mukasey*, 259 F. App'x 24, 25 (9th Cir. 2007) (affirming determination that an individual "knowingly participated in the smuggling plan by pretending to be the alien child's mother"); U.S. Federal News, *Ecuadorian Couple Sentenced to More Than 5 Years in Federal Prison for Alien Smuggling Conspiracy*, Sept. 7, 2016 (indicating that an investigation revealed that a defendant "smuggled a 2-year-old El Salvadoran child through El Paso's Bridge of the Americas Port of Entry" by using "her own child's birth certificate to facilitate the smuggling" and that another child was raped by smugglers who were involved in the same conspiracy).[9]  Not only is the Defendants' request unprecedented, it is bad policy that could endanger more children.

---

[9] The events discussed in the article cited resulted in the following prosecutions: *United States v. Estrella Villota*, No. EP:15-CR-1603-KC(1) (W.D. Tex. 2016) (conviction for alien smuggling), *United States v. Malagon Sandoya*, No. EP:15-CR-1603-KC(2) (W.D. Tex. 2016), (conviction for alien smuggling), and *United States v. Marcial*, No. EP:15-CR-1603-KC(5) (W.D. Tex. 2016), (conviction for false statement).  *See also United States v. Castro*, No. 3:11-CR-03064-PRM (W.D. Tex.) (concerning the defendant's prosecution for smuggling an Ecuadorian child who she presented as her United States citizen daughter); *United States v. Martinez Velez*, No. 3:13-cr-02685-DB (W.D. Tex.) (concerning the defendant's prosecution for smuggling an Ecuadorian child who she presented as her United States citizen son); *United States v. Garcia*, No. EP:17-MJ-4746-RFC (W.D. Tex.) (concerning the defendant's prosecution for smuggling a Mexican female

C.      **The Defendants have not established coercion or involuntariness**

The Defendants have not pled guilty or attempted to do so.  However, through their counsel,

they claim that they feel coerced into pleading guilty because of their lack of information about

the juveniles.  (Mot. 9-14.)  The Defendants have not offered any evidence supporting their claims

of coercion (or even their claims to be the juveniles' parents).  As discussed above, to the extent

that they cannot voluntarily plead guilty, their remedy is to go to trial.  Regardless, their allegations

do not rise to the level of rendering any plea involuntary under the applicable legal standards.

"The test for determining a guilty plea's validity is 'whether the plea represents a voluntary

and intelligent choice among the alternative courses of action open to the defendant.'"  *Matthew*

*v. Johnson*, 201 F.3d 353, 364 (5th Cir. 2000) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)).

"The plea must be entered 'voluntarily,' i.e., not be the product of actual or threatened physical

harm, or mental coercion overbearing the will of the defendant or of state-induced emotions so

intense that the defendant was rendered unable to weigh rationally his options with the help of

counsel."  *Id.* at 365 (internal quotations and citations omitted); *see also Jones v. Estelle*, 584 F.2d

687, 690 (5th Cir. 1978) (citing *Brady v. United States*, 397 U.S. 742, 750-51 (1970).

"Not all pressures to plead, however, are considered illegal inducements."  *Grabowski v.*

*Jackson Cty. Pub. Defs. Office*, 47 F.3d 1386, 1389 (5th Cir. 1995), *vacated on reh'g en banc*, 79

F.3d 478 (5th Cir. 1996).[10]  "There are many reasons why a defendant may choose to plead guilty.

_____

child who she presented as her United States citizen son).  The Court will also recall the recent
case of *United States v. Serrano-Villeda*, No. EP:17-MJ-03966-MAT (W.D. Tex.), which was
previously set for trial on November 7, 2017.  In that case, the defendant was accompanied by his
daughter.  Although they told Border Patrol that she was a juvenile at the time that they were
apprehended, she later admitted to being 19 years old.

[10] Although the three-judge panel's opinion in *Grabowski* was vacated when the Fifth
Circuit decided to take the case en banc, the en banc court reached the same decision as the three-
judge panel on the habeas corpus relief implicated by the claim of involuntariness, albeit without

They do not, simply by being denominated 'fears,' necessitate the conclusion that the plea was not voluntary." *Kent v. United States*, 272 F.2d 795, 798 (1st Cir. 1959). Thus, "[e]motional turmoil from being accused of a crime does not give rise to a finding of coercion." *Meachem v. Keane*, 899 F. Supp. 1130, 1141 (S.D.N.Y. 1995). Rather, "[t]he relevant question" in these circumstances "is not whether the accused was sensitive to external considerations—many defendants are—but instead whether the decision to plead was voluntary, i.e., a product of free will." *United States v. Pellerito*, 878 F.2d 1535, 1541 (1st Cir. 1989).

Notably, courts have generally found that family-related pressures do not rise to the level of overcoming a defendant's free will and rendering a plea involuntary. *See Parrish v. Beto*, 414 F.2d 770, 771 (5th Cir. 1969) (rejecting a claim of mental coercion based, in part, on "the dramatic pleas of" the defendant's mother); *Pellerito*, 878 F.2d at 1541 (concluding that evidence regarding the defendant's agitated emotional state brought on by conversations with his hospitalized mother did not "necessarily show coercion, duress, or involuntariness"); *Wojtowicz v. United States*, 550 F.2d 786, 792 (2d Cir. 1977) (rejecting undue coercion claim based on the defendant's assertion that he pleaded guilty because he was afraid that his paramour would not wait for him if he went to trial); *United States ex rel. Mascia v. Zelker*, 450 F.2d 166, 168-69 (2d Cir. 1971) (concluding that pressure from defense counsel, combined with mother's threat to commit suicide, were insufficient to establish a need for evidentiary hearing on coercion); *Kent*, 272 F.2d at 798 ("The fact that a defendant is told that his brother and others will be called to testify against him if he stands trial cannot be illegal coercion, at least in the absence of an allegation that their testimony would have been false."); *United States v. Gasaway*, 437 F. App'x 428, 435 (6th Cir. 2011)

---

discussion. *See Grabowski*, 79 F.3d at 480. Thus, the three-judge panel's opinion still presents strong persuasive authority of the Fifth Circuit's view on these issues.

(holding that family pressure to plead guilty "is not the type of coercion that makes a defendant's acceptance of a guilty plea involuntary"); *United States v. Robinson*, 427 F. App'x 163, 167 (3d Cir. 2011) (similar); *Maine v. Malo*, 577 A.2d 332, 334 (Me. 1990) (concluding that "emotional duress stemming from the effect of trial publicity on [the defendant's] family" did not render his plea involuntary). Indeed, even a threat to prosecute a defendant's family members does not constitute coercion when the Government has probable cause to bring such charges. *See United States v. Diaz*, 733 F.2d 371, 375 (5th Cir. 1984).

Furthermore, the withholding of information directly related to the criminal case at issue does not necessarily constitute coercion. *United States v. Conroy*, 567 F.3d 174, 179 (5th Cir. 2009) (holding that the withholding of exculpatory evidence, in addition to impeachment evidence, does not render a guilty plea involuntary); *see also United States v. Sanders*, 843 F.3d 1050, 1054 (5th Cir. 2016). Thus, in *United States v. Johnson*, 603 F. App'x 867, 872 (11th Cir. 2015), the Eleventh Circuit explained that the "Constitution requires only that a guilty plea be knowing and voluntary; not that it be fully informed." Accordingly, that court rejected the defendants' argument that the Government had an obligation to inform them of all facts that could be used to enhance their Guidelines sentencing ranges. *Id.* It noted that any such information "only affects the potential length of their sentences." *Id.* Consequently, because it did "not relate to their convictions" it did "not affect the knowing and voluntary nature" of their pleas. *Id.*

Here, the Defendants have not pleaded guilty and are free to proceed to trial. Even if they had pled guilty, however, they have not established any basis for their claim of coercion that would allow them to withdraw such pleas. Moreover, ORR has not offered to provide more information about the juveniles in exchange for the Defendants to plead guilty. Their ability to obtain that

information is contingent on following ORR's policies, not their plea in these criminal cases.  The

Defendants' claims of involuntariness and coercion are unfounded.

### D. *Padilla v. Kentucky* **has little or no relevance here**

Both the Court's order and the Defendants (Order 3; Mot. 11) invoke the Supreme Court's

decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010).  In *Padilla*, a noncitizen petitioner sought

postconviction relief from his conviction for transportation of methamphetamine based on the fact

that his trial counsel had failed to advise him that he would be subject to automatic deportation if

he pled guilty.  *Id.* at 359-60.  The Supreme Court held that trial counsel's failure to advise the

petitioner about the immigration consequences of his plea constituted constitutionally deficient

performance under *Strickland* ineffective assistance of counsel standard.  *Id.* at 366-69.  The Court

did not reach the question of whether the petitioner could demonstrate prejudice such that he would

be entitled to postconviction relief.  *Id.* at 374-75.  In the wake of *Padilla*, Rule 11 was amended

to include a warning regarding immigration consequences for noncitizen defendants in the plea

colloquy.  Fed. R. Crim. P. 11(b)(1)(O).

The automatic deportation faced by the petitioner in *Padilla* is not analogous to the

Defendants' situation with their alleged juvenile relatives.  The Government has not suggested that

the Defendants' decision to plead guilty or go to trial has any bearing on when and how they will

receive additional information concerning the juveniles.  Rather, these criminal cases, which are

being litigated by the U.S. Attorney's Office, have no bearing on ORR's custody of the juveniles.

Regardless of the outcome here, the Defendants will have to follow ORR's policies to establish

their relationship with the juveniles in order to obtain information about them.  Moreover, the

Defendants will be free to pursue whatever immigration relief they wish once their criminal cases are concluded (regardless of the outcome).[11]

To the extent that *Padilla* has any application here, it would merely suggest that the Court include a question in its colloquy to establish that the Defendants' concern for the juveniles has not overwhelmed them to the point that they can no longer voluntarily plead guilty.  To the extent that they are unable to do so voluntarily, they may proceed to trial.

### E.    The Defendants have not established any Due Process violation

Lacking any legitimate basis for seeking dismissal of the charges against them, the Defendants go on at length about alleged Due Process violations.  (Mot. 8-14.)  However, the Defendants have been detained on criminal charges, with a bond set at $5,000.   This is commonplace in the criminal justice system and plainly does not constitute a Due Process violation any more that it would for any other alien facing criminal charges.

The Defendants' detention is authorized by 18 U.S.C. § 3142, which was upheld against a Due Process challenge by the Supreme Court in *United States v. Salerno*, 481 U.S. 739 (1987). The modest $5,000 bond is plainly constitutional, particularly in light of the fact that the Defendants are aliens with minimal or no ties to the United States who could easily flee to Mexico. *See United States v. McConnell*, 842 F.2d 105, 109 (5th Cir. 1988) (upholding the setting of bail at $750,000 even where the defendant was unable to pay it and concluding that it was "neither

---

[11] The Defendants contend that they "have no options" to pursue their immigration claims civilly because they lack the funds to hire an immigration attorney.  (Mot. 11.)  It is well-settled, however, that there is no Sixth Amendment right to Government-funded counsel in immigration proceedings.  *Prichard-Ciriza v. I.N.S.*, 978 F.2d 219, 222 (5th Cir. 1992).  *Padilla* does not suggest anything to the contrary, nor does it provide a license for appointed counsel in their criminal cases to seek immigration relief on their behalf in those criminal cases.

constitutionally nor statutorily infirm").  The Defendants' discussion of immigration bonds (*see* Mot. 9-10) is entirely irrelevant to these criminal cases.

Moreover, the courts have also upheld various conditions of detention against civil challenges, including "double-bunking" and "denials of such items as visitation, telephone access, recreation, mail, legal materials, and showers for a three-day period."  *Broussard v. Par. of Orleans*, 318 F.3d 644, 658 (5th Cir. 2003).  The Defendants' assertion of parental rights[12] does not change that analysis.  *See Malagon de Fuentes v. Gonzales*, 462 F.3d 498, 505-06 (5th Cir. 2006) (rejecting a claim of "substantive due process violation of parental rights" for an alien with children who were United States citizens where she was barred from returning to the United States as it "would subject to strict scrutiny any attempt by the government to incarcerate or bar from entry into the country a parent with children, or child with parents, in the United States."); *Ghaith v. Rauschenberger*, 493 F. App'x 731, 739 (6th Cir. 2012) (concluding that allegations that the police conspired to deny parental rights to a civil plaintiff-arrestee were "insufficient to establish a constitutional violation"); *McCurdy v. Dodd,* 352 F.3d 820, 827 (3rd Cir.2003) ("[T]he Supreme Court has protected the parent only when the government directly acts to sever or otherwise affect his or her legal relationship with a child. The Court has never held that governmental action that affects the parental relationship only incidentally ... is susceptible to challenge for a violation of due process") (quoting *Valdivieso Ortiz v. Burgos,* 807 F.2d 6, 8 (1st Cir.1986)); *Herrin v. Treon*, 459 F. Supp. 2d 525, 544 (N.D. Tex. 2006) (rejecting civil claim based on "constitutional rights as a parent").  The Defendants' difficulty obtaining information

---

[12] Of course, Ms. Zavala claims to be a grandparent, not a parent, of the juvenile with whom she was apprehended.  The Court was also inquiring more broadly at the initial appearances as to whether any of the defendants present were traveling with a juvenile who was a "relative."  (ECF No. 14 at 8:23-24.)

about the juveniles is no different from the circumstances faced by any other detained arrestee facing criminal charges who has their liberty restricted.  *See Block v. Rutherford*, 468 U.S. 576, 589 (1984) (upholding a constitutional challenge to a blanket prohibition on visits from family or friends for pretrial detainees).

Furthermore, though not relevant for the purposes of these criminal cases, the Defendants do not necessarily have the broad Due Process rights that they claim in the context of immigration proceedings.  The Supreme Court has explained that aliens who are "paroled" into the United States for limited purposes have not effected an "entry," and do not have the same constitutional rights under the Due Process clause as citizens or aliens who have entered.  See *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citing *Leng May Ma v. Barber*, 357 U.S. 185, 188-90 (1958), and *United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990)); *Castro v. Cabrera*, 742 F.3d 595, 599-601 (5th Cir. 2014) (citing *Gisbert v. U.S. Atty. Gen.*, 988 F.2d 1437, 1440-44 (5th Cir.), *amended*, 997 F.2d 1122 (5th Cir. 1993)); *see also Demore v. Kim*, 538 U.S. 510, 531 (2003) (concluding that an alien's six month detention pending removal proceedings did not violate Due Process).

Regardless, the Defendants are currently detained on criminal charges, not in removal proceedings.  At this point, it is not clear what the outcome of their immigration proceedings will be and they can litigate any Due Process claims once their criminal cases have concluded.[13]

F.      **The civil *Flores* settlement has no applicability in these criminal cases**

The Defendants discuss the civil *Flores* settlement at length and also quote from aspirational policy statements on DHS's website and Congressional floor speeches regarding

---

[13] In fact, the Defendants' motion to dismiss is an attempt to circumvent the civil process through a criminal motion.  *See* FED. R. CIV. P. 5.1(setting forth the requirements a party must follow when raising a constitutional challenge to a statute).  Additionally, the Government notes that the civil process available to the Defendants is not within the scope of the Federal Public Defender's representation of the Defendants in these criminal proceedings.

appropriations bills.  (Mot. 3-8.)  The Court also asked about the *Flores* settlement in its Order.  (Order at 2.)  These materials have no bearing on the criminal cases before the Court and do not change the applicable legal analysis in any way.

The *Flores* settlement established policies for the detention, release and treatment of juveniles in the custody of the former Immigration and Naturalization Service.  *See D.B.*, 826 F.3d at 732.  The intent of the *Flores* settlement was to create minimum guidelines and requirements regarding the juveniles' conditions of confinement to ensure their well-being and safety.  *See Walding v. United States*, No. CIV.A. SA-08-CA124XR, 2009 WL 890265, at *20 (W.D. Tex. Mar. 30, 2009).  Further, the settlement's "purpose was to establish minimum standards for licensed programs relating to conditions of confinement."  *Id.* at 21.

Courts have held that the *Flores* settlement does not apply to the parents of such juveniles.  *See Bunikyte, ex rel. Bunikiene v. Chertoff*, No. A-07-CA-164-SS, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007) (holding that the *Flores* settlement creates no rights in the parents of alien juveniles); *see also Flores v. Lynch*, 828 F.3d 898, 908 (9th Cir. 2016) (citing *Bunikyte*).  Moreover, a review of the *Flores* settlement shows that processes for the distribution of information concerning juvenile aliens are not included in the settlement agreement.  (*See* attached Exhibit "A" *Flores* settlement.)  Regardless, most of the Defendants' discussion of the *Flores* settlement concerns standards for civil detention during the course of immigration proceedings, which—as discussed above—is irrelevant to this criminal case.  As the Supreme Court has explained, an immigration proceeding is "a purely civil action to determine eligibility to remain in this country," which is distinct from the crime of unlawful entry.  *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984).

- 19 -

The Defendants also rely on a *civil* enforcement policy directive issued by the former acting director of Immigration and Customs Enforcement on its website (*see* Mot. 4, 7), which explicitly states that it "may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil or criminal matter." *See* U.S. Immigration and Customs Enforcement, *11064.1: Facilitating Parental Interests in the Course of Civil Immigration Enforcement Activities*, https://www.ice.gov/doclib/detention-reform/pdf/parental_interest_directive_signed.pdf (issued Aug. 23, 2013). This civil directive is plainly not binding on the current administration's handling of criminal matters. Otherwise, the Defendants also rely on two floor speeches of a single legislator on appropriations bills in 2005 and 2006 (Mot. 5-7), which are obviously not controlling here. *Weinberger v. Rossi*, 456 U.S. 25, 35 n.15 (1982) (stating that the remarks of even a "sponsor of legislation are certainly not controlling in analyzing legislative history"). Simply put, the *Flores* settlement and other materials concerning civil detention of juveniles have no bearing on these criminal prosecutions of adult aliens.

### III.  CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss should be denied.

Respectfully submitted,

RICHARD L. DURBIN, JR.
UNITED STATES ATTORNEY

By:     /s/ _____
DOUGLAS C. RENNIE
Special Assistant U.S. Attorney
New York Bar #4108031
700 E. San Antonio, Suite 200
El Paso, Texas 79901
(915) 534-6884

**CERTIFICATE OF SERVICE**

I hereby certify that on this, the 20th day of November, 2017, a true and correct copy of the foregoing was provided to the attorney of record in this case:

Sergio Garcia
Assistant Federal Public Defender
*Counsel for the Defendants*

/s/
DOUGLAS C. RENNIE
Special Assistant U.S. Attorney