# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **NATIVIDAD ZAVALA-ZAVALA** | ) EP-17-MJ-4462-MAT |
| **BLANCA NIEVE VASQUEZ-HERNANDEZ** | ) EP-17-MJ-4499-MAT |
| **ELBA LUZ DOMINGUEZ-PORTILLO** | ) EP-17-MJ-4409-MAT |
| **JOSE FRANCIS YANES-MANCIA** | ) EP-17-MJ-4461-MAT |
| **MAYNOR ALONSO CLAUDINO-LOPEZ** | ) EP-17-MJ-4456-MAT |

## DEFENDANTS' AMENDED RESPONSE & OBJECTION TO GOVERNMENT'S MOTION TO AMEND/CORRECT THE COURT'S OPINION

Parents-Defendants Elba Luz Dominguez-Portillo, Natividad Zavala-Zavala, Jose Francis Yanes-Mancia, Blanca Nieve Vasquez-Hernandez, and Maynor Alonso Claudino-Lopez, by and through the undersigned attorney, file this response and objection.

**To recapitulate:** on November 7, 2017, Parents-Defendants filed a motion to dismiss. On November 27, 2017, at a hearing on the motion to dismiss, Magistrate Judge Miguel A. Torres denied the Parents-Defendants' motion. On December 1, 2017, Magistrate Torres found the Parents-Defendants guilty of illegal entry misdemeanors under 8 U.S.C. § 1325 and sentenced them to probation. On December 14, 2017, the Parents-Defendants filed their *notice of appeal.* On January 5, 2018, Magistrate Torres issued a written opinion of his denial of the Parents-Defendants' motion to dismiss. On January 17, 2018, approximately 2 weeks after

the written decision by Magistrate Torres, almost 1 month after the Parents-Defendants filed their notice of appeal, and almost 2 months after Magistrate Judge Torres heard arguments on the motion to dismiss and denied the motion orally, the government filed a "motion to amend/correct the court's opinion" by Magistrate Torres that denied the Parents-Defendants' motion to dismiss, essentially contending that the minors involved in these cases **may** not be the Parents-Defendants' real children.

*On January 24, 2018, Defendants filed a "Response and Objection to government's motion to amend/correct the court's opinion." On January 31, 2018, the government filed a "Motion to Seal" contending that "Exhibit C" (Forms I-213) attached to the Defendants' Response contained "information subject to privacy protections" like "A numbers, birthdates, and addresses." Before the Defendants had an opportunity to respond to the government's motion, Magistrate Judge Torres granted the government's motion and issued an order directing Defendants to "file an amended response." The next day, February 1, 2018, the government filed a motion to withdraw its "Motion to Seal." Under Magistrate Torres' directives, the Defendants now file their "amended response" and notify the Court that "Exhibit C" (Forms I-213) will be filed under seal.*

***As previously stated,*** the government's motion is meritless and is simply a poor legal strategy designed to create a dispute on an issue the government purposely and intentionally declined to press throughout <u>all</u> the proceedings, including at trial. For the following reasons, the government's motion must be denied.

2

**First,** the government's motion is unreasonably untimely.  As stated above, the Parents-Defendants' motion to dismiss was denied at a hearing on November 27, 2017.  On December 14, 2017, the Parents-Defendants filed their notice of appeal and, subsequently, on January 5, 2018, Magistrate Torres entered the written order of his denial of the Parents-Defendants' motion to dismiss.  Now, *after trial* and almost 2 months after Magistrate Torres' decision, the government files, without citing any authority, a motion that **pertains to a non-dispositive *pre-trial* motion** that was resolved in the government's favor.  Furthermore, the government's requested amendment does **not** affect Magistrate Torres' final finding and judgment of guilt.  This sneaky maneuver by the government is unreasonable and untimely.

**Second,** the government waived the determination by Magistrate Judge Torres that the minors involved in these cases are the children of the Parents-Defendants.  The government never adequately presented the issue to Magistrate Torres for consideration.  The government did not address or properly articulate an objection nor did it provide any facts, legal citations, arguments or analysis to contradict Magistrate Judge Torres' determination that the minors involved were the children of the Parents-Defendants.  The government failed to pursue its vague claim that the children were not the defendants' children.  For example, at the motion to dismiss hearing, the government simply made vague assertions like:

> As—as far as due process goes, Your honor, again, to the extent that, you know, they have parental rights, assuming that they are the parents—and the government **doesn't necessarily know** is another big point here, is, you

3

know, when you have people coming across the Rio Grande River with children, you don't necessarily know that this person is the child's parent, even though they may say that. It's—and it's very difficult to conform that type of information in this type of circumstance, which is the point we were making in our brief.

*See* Transcript of Motion to Dismiss Hearing at page 27 attached here as <u>Exhibit A</u>.

However, simply stating that the government "doesn't necessarily know" whether the minors involved are the children of the Parents-Defendants is not the same as providing facts, legal citations, arguments or analysis to contradict Magistrate Judge Torres' determination that the minors involved were the children of the Parents-Defendants. The government **intentionally** failed to pursue or press on the issue. In fact, when given a chance by Magistrate Torres to do so, the government intentionally abandoned the issue by not providing support for its contention. At the motion to dismiss hearing, the following colloquy between Magistrate Torres and government took place:

> THE COURT: So the government's default is that they're not the parents?
>
> MS. FRANCO-GREGORY: No, Your Honor. But—and, again, we're going so far away from—from the issues at hand, which is a criminal prosecution of a misdemeanor illegal entry into the United States. And the government would re-urge what is contained within the brief, that the issue as far as providing them notice as to the status of the child that they were accompanied with *is not ripe* at this time.

*See* Transcript of Motion to Dismiss Hearing at pages 46-47 attached as <u>Exhibit B</u>.

Clearly, the government elected to pursue the 1325 charge and failed to pursue the vague claim that the children were not the Parents-Defendants' children. Throughout <u>all</u> the proceedings, the government failed to provide evidence and

4

support to its contention, thus, it waived that issue. *United States v. Beaumont,* 972 F.2d 553, 563 (5th Cir. 1992). Federal courts are courts governed by rules of evidence and simply stating "we do not know" or "is not ripe" does <u>not</u> equate to providing facts, arguments or analysis to contradict that the minors involved in these cases are the children of the Parents-Defendants. That statement in itself does not prove or disprove anything. A proper objection requires a distinct statement of the matter objected and the <u>specific</u> ground of the objection. *See* Fed. R. Evid. 103(a)(1); *United States v. Williams,* 990 F.2d 507, 511 (9th Cir. 1993).

The government certainly had an incentive to show that the minors involved were not the Parents-Defendants' children. Throughout <u>all</u> the proceedings, the Magistrate Judge referred to the minors as the Defendants' children and to the Defendants' parental rights. If the minors involved were not the real children of the Defendants, the government would have charged Defendants with smuggling felonies, <u>not</u> just petty misdemeanors. Instead, the government stipulated at trial to an exhibit of an official government document that it is stamped as a "credible fear claim" and refers to the minors as the Parents-Defendants' children. *See* Forms I-213 **filed under seal as <u>Exhibit C</u>.** Certainly, the government's stipulation to documents stating that the minor children were the children of the defendants **<u>contradicts</u>** the government's current claim, i.e., that the minors are not the Parents-Defendants' children. The fact that the government stipulated to documents stating that the children were the children of the Parents-Defendants waives that issue. Period. **The words of the parties manifest their intent or**
5

position with respect to a waiver.  *International Ins. Co. v. RSR Corp.*, 426 F.3d 281, 300 (5th Cir. 2005).

After hearing testimony from the Parents-Defendants throughout all the proceedings, from the detention hearing to sentencing, Magistrate Judge Torres correctly determined and **expressly stated throughout all proceedings** that these cases implicated the Parents-Defendants' children.  The government simply did <u>not</u> offer any evidence to rebut such determination by the Magistrate Judge.

**Third,** Magistrate Torres' determination that these cases involved the children of the Parents-Defendants is supported by the record and is <u>not</u> clearly erroneous.  *See* 28 U.S.C. § 636(b)(1)(A).  Here, the five Parents-Defendants provided oral testimony to Magistrate Torres, who as the trier of fact, heard from them with respect to their children throughout <u>all</u> the proceedings.  They also provided documents written by immigration officers (who are government employees/agents and had face to face contact with them), which indicate that: (1) the minors involved were the Parents-Defendants' children, (2) the Defendants and their children left their Central American countries to escape violence, and (3) the Defendants made a "credible fear claim."  *See* **under seal** <u>Exhibit C</u>; *see also* Transcript Pages of Detention Hearing at pages 10-12 *in* Zavala-Zavala; 7-9 *in* Vasquez-Hernandez; 8-11 *in* Dominguez-Portillo; 10-12 *in* Yanes-Mancia; and 11-13 *in* Claudino-Lopez attached here as <u>Exhibit D</u>; *and see also* Transcript Pages of Trial/Sentencing Hearing at pages 43-46 attached here as <u>Exhibit E</u>.

<u>Throughout all the proceedings</u>, Magistrate Torres heard testimony that <u>all</u>

defendants were accompanied by their minor children when they entered the country. Magistrate Judge Torres, as the trier of fact, was there to observe and weigh the credibility of the witnesses. He heard testimony from all five Parents-Defendants at the detention and sentencing hearings concerning the separation from their children. The Magistrate Judge heard these witnesses' testimony concerning their fear of not knowing the whereabouts of their children! In addition, the Magistrate Judge also reviewed the stipulated evidence submitted at trial. Here, the record clearly shows that Magistrate Judge Torres correctly determined that these cases involved the Defendants' children. That is why Magistrate Torres: (1) referred to the minors as the Defendants' children throughout all the proceedings, and (2) stated on the record that he reached out to the Office of the Federal Defenders Office to handle these cases. With respect to the Defendants' serious concerns of being separated from their minor children, Magistrate Torres <u>stated on the record</u>: "I don't think there is a lot of reason to doubt the sincerity of those expressions in most cases." *See* Transcript of Status Conference dated November 1, 2017 at page 5 attached here as <u>Exhibit G</u>.

United States Magistrate Judge Torres would **not** waste federal resources if he did not find the Defendants' claim concerning their children credible. The fact is that Magistrate Judge Torres did find the Defendants' claim regarding the separation from their children credible. Such finding by Magistrate Judge Torres, based upon the evidence, was **key** in his determination that these cases involved the separation of Parents-Defendants from their minor children. On the record, he stated that he is aware of the government's practice regarding the family separation issue and of

the cases, like the *Flores* case, that document that particular issue. Magistrate Judge Torres' determination that these misdemeanor cases involved the children of the Parents-Defendants is supported by the record and is <u>not</u> clearly erroneous. A *clearly erroneous* standard of review is applied for nondispositive findings by a magistrate judge. *United States v. Raddatz,* 447 U.S. 667, 673 (1980).

**Fourth,** the government's claim of lack of knowledge regarding the family separation in these cases is, at best, disingenuous. It is a common practice for the government to separate the parents from their children in these type of cases. **<u>The government has separated families in this district before!</u>** *Flores v. Lynch,* 828 F.3d 898 (9th Cir. 2016), *Bunikyte ex. Rel. Bunikiene v. Chertoff,* N. 1:07-cv-00164-SS 2007wl1074070, at *1 (W.D. Tex. Apr. 9, 2007), and *In re Hutto Family Dt. Ctr.,* No. 1:07-cv00164-SS, Dkt. 94, (W.D. Tex. Aug. 26 2007) document this practice by the government. Aware of the government's practice of separating families and the case law involving the Flores Settlement litigation concerning this issue, Magistrate Torres was justified in requesting that the parties brief the issue.

**Fifth,** the court should be mindful of the prior manipulative tactics used by the government in these cases. For example, the government took custody of the Parents-Defendants' children without providing information about the specific whereabouts of these key material witnesses and then offered the Parents-Defendants plea agreements with a sentence of time served. This tactic gave the false impression that the Parents-Defendants could put this matter behind them and be quickly reunited with their children. *See* Transcript of Motion For Continuance

at pages 5-17 attached to this Response as <u>Exhibit F</u>. The government knew these Parents-Defendants could obtain a time served sentence without a plea agreement since they were charged with misdemeanors offenses and did not have any prior criminal or immigration record. The government also filed a **trial motion,** i.e, the *Lafler/Frye* motion, while the Parents-Defendants' **pretrial motion** to dismiss was pending, as a mechanism to bypass the resolution of the motion to dismiss stage. And now, <u>without</u> any supporting evidence, *the government's lawyer* contends that the minors involved *may* not be the children of these Parents-Defendants. However, lawyers owe duty of candor to the tribunal and a prosecutor for the government <u>cannot</u> argue facts or inferences that are not supported by the evidence in the case or that the prosecutor knows are false or has very strong reason to doubt. *United States v. Corona,* 551 F.2d 1386, 1390 (5th Cir. 1977). Here, the record shows that the government's attorney is familiar with the cases involving the Flores Settlement litigation (he argued that it did not apply here because these are not civil cases), thus, he is clearly familiar with the family separation cases. In addition, the evidence (comprised of testimony and exhibits) supports the magistrate judge's determination that the minors involved are the Defendants' children. Accordingly, the government's argument that the minors involved may not be the Defendants' children, as if this was not a practice by the government or the case law documenting such practice did not exist, simply displays a lack of candor. Period!

The government's vague contention that the minors *may* not be the real children of the Parents-Defendants is simply an *unfair, sneaky and calculated method*

by the government to preserve an issue for appeal that was never preserved and is not proper for the magistrate's reconsideration. And, this Court should be mindful of what the Supreme Court said over 80 years ago with respect to *a United States Attorney's use of unfair, sneaky and calculated methods:*

> **The United States Attorney** is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his **duty to refrain from improper methods calculated** to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States,* 295 U.S. 78, 88 (1935).

For the foregoing reasons, the government's motion must be denied.

Respectfully submitted,
MAUREEN SCOTT FRANCO
Federal Public Defender
/s/
SERGIO GARCIA
Assistant Federal Public Defender
Western District of Texas
700 E. San Antonio, D-401
El Paso, Texas 79901
(915) 534-6525

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of February 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

/s/

_____

Sergio Garcia
Attorney for Defendant

10



1  in -- in what it does going forward.

2  THE COURT:  And I think even the Flores

3  Settlement has a disclaimer like that.

4  MR. RENNIE:  Yes.  Yes, Your Honor.

5  And, specifically, with respect to the Flores

6  Settlement, there are, I believe, the Western District

7  of Texas, itself, has held that it doesn't

8  [indiscernible] parental rights.  And I think the Ninth

9  Circuit also followed that authority in making a similar

10  finding.

11  As -- as far as due process goes, Your Honor,

12  again, to the extent that, you know, they have parental

13  rights, assuming that they are the parents -- and the

14  government doesn't necessarily know is another big point

15  here, is, you know, when you have people coming across

16  the Rio Grande River with children, you don't

17  necessarily know that this person is the child's parent,

18  even though they may say that.  It's -- and it's very

19  difficult to confirm that type of information in this

20  type of circumstance, which is the point we were making

21  in our brief.

22  THE COURT:  Yeah.

23  MR. RENNIE:  So the other point is that the

24  fact that they're claiming parental rights, and I don't

25  know whether they have -- I can't advise them as far as

```
1            THE COURT:  Setting aside the evidentiary
2  issues, which, you know, you've raised and I
3  understand.
4            MS. FRANCO-GREGORY:  But, Your Honor, the
5  assumption there is that there is -- that these are the
6  parents with no evidence to support that they are the
7  parents.
8            THE COURT:  So the government's default is that
9  they're not the parents?
10            MS. FRANCO-GREGORY:  No, Your Honor.  But --
11  and, again, we're going so far away from -- from the
12  issues at hand, which is a criminal prosecution of a
13  misdemeanor illegal entry into the United States.  And
14  the government would re-urge what is contained within
15  the brief, that the issue as far as providing them
16  notice as to the status of the child that they were
17  accompanied with is not ripe at this time.
18            THE COURT:  All right.
19            MS. FRANCO-GREGORY:  And so, again, the issue
20  of establishing whether they're not parents or they are
21  parents is not a matter before the Court.  And so the
22  government would rely on that argument and also stress
23  that there is no evidence at this point supporting that
24  they are indeed the parents of those children, and,
25  again, stressing how the government outlined in its
```

1    brief there are many instances, including misdemeanor
2    cases, where children are brought in with aliens in the
3    hopes of not being prosecuted criminally or are facing
4    immigration consequences.
5           THE COURT:  And the government has said that
6    repeatedly, but I'm sure there's many cases where that's
7    not the case.
8           And so, I mean, what -- what is the
9    government -- I'll just ask you if you know.  But at
10   what point do the parents get to find out anything about
11   their kid's case?
12          I mean, they may be sitting here -- and, again
13   you've have raised these evidence issues, which I don't
14   think are -- I mean, which I think are -- are
15   legitimate.  But I'll tell you this, I mean, if you're
16   making a decision about processing your own case and
17   trying to figure out whether you're going to plead
18   guilty or not, I mean, at what point do you get to find
19   out, according to government policy, if you happen to
20   know, when -- whether you are going to be deported at
21   the same time as your child or before or after or when
22   will they put them in touch?
23          I mean, they're here with minors.  And if they
24   process these cases, and they go over -- I'm talking
25   about practical things here.  They -- if they plead

Exhibit D

Zavala - Zavala 10

```
 1  against you.
 2          All right.  And those of you that are standing,
 3  you can have a seat, please.
 4          (Proceedings continued but are not made a part
 5  of this record)
 6          THE COURT:  All of you will be meeting with
 7  your attorney in the very near future.  Your attorney
 8  will discuss in detail everything that we've talked
 9  about today.
10          In a few minutes, you're going to receive
11  written notice that your case has been set for the next
12  court hearing, and this written notice will contain the
13  name and the contact information for your attorney.
14          Let me ask you, those of you that are actually
15  sitting against the wall over here that have the charges
16  of illegal entry, is there anybody in this group right
17  here that was accompanied by a minor child or a minor
18  sibling?
19          (Proceedings continued but are not made a part
20  of this record)
21          THE COURT:  And Ms. Zavala?
22          THE DEFENDANT:  I had a boy with me whose
23  mother is over here.  He's seven years old.
24          THE COURT:  And you're the grandmother?
25          THE DEFENDANT:  Yes.  The mother is here in New
```

1  York, and I have raised him since -- for these past six

2  years.

3            THE COURT:  All right.  At the time that you

4  were separated, were you given any information about how

5  to find out the whereabouts or the well-being of your

6  grandchild?

7            THE DEFENDANT:  They told me to say goodbye to

8  your grandson because it's going to be days that you

9  won't see him.

10           THE COURT:  All right.  And were you given any

11 information to contact -- to contact anybody to find out

12 where the grandchild might be or how the grandchild

13 might be?

14           THE DEFENDANT:  No, nothing.  They gave me a

15 piece of paper that I'm keeping when they arrested me

16 and brought me over here, but I don't know what the

17 paper says.

18           THE COURT:  Well, that doesn't sound real

19 helpful.  So you're from Honduras?

20           THE DEFENDANT:  From Honduras.

21           THE COURT:  You can have a seat, ma'am.

22           For those of you that I just talked to about

23 being accompanied by your children or grandchildren,

24 make sure you discuss it with your attorney, please, and

25 your attorney may be able to assist you in getting some

```
 1  information about the whereabouts and well-being of your
 2  children.
 3          All right.  We're in recess.  You're in the
 4  custody of the U.S. Marshals.
 5          (Deposition concluded)
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Vasquez-Hudez [7]

```
1              THE DEFENDANT:  No.

2              THE COURT:  All right.  Then based on that

3    information, I find that you do qualify for an appointed

4    lawyer.

5              Let me ask either of you.  Were either of you

6    accompanied by a minor sibling or minor children?

7              THE DEFENDANT:  My son.

8              THE COURT:  How old is your son, Ms. Vasquez?

9              THE DEFENDANT:  13 years old.

10             THE COURT:  And you were separated from your

11   son at the time of your -- of your arrest; is that

12   correct?

13             THE DEFENDANT:  I was separated from my son at

14   immigration.

15             THE COURT:  All right.  Did the --

16             THE DEFENDANT:  Right now I don't know anything

17   about him.

18             THE COURT:  Did the authorities provide you

19   with any information as to how to contact either your

20   son or the agency that's holding your son?

21             THE DEFENDANT:  They only said that he was with

22   the camps and that, probably, yesterday, that is

23   Wednesday, I would be able to know more about him.

24             THE COURT:  Were you given any information, a

25   contact number of somewhere you could call or somebody
```

1   could call on your behalf to determine the well-being or

2   the whereabouts of your child?

3          THE DEFENDANT:  No.  I wasn't told anything.

4   They just said in their camps.

5          THE COURT:  And were you given any paperwork in

6   this respect?

7          THE DEFENDANT:  No.  They didn't say anything.

8   I was told that he was going to be taken to a place

9   where they put minors, and then I was taken somewhere

10  else.

11         THE COURT:  All right.  Ms. Vasquez, I'm

12  appointing you a lawyer to represent you in this

13  criminal charge.  But make sure that when you talk to

14  your lawyer -- your lawyer should be out to see you

15  hopefully tomorrow, but it could be early next week --

16  that you discuss this with your lawyer, and your lawyer

17  might be able to give some assistance in terms of trying

18  to get some information about the well-being or the

19  whereabouts of your child, all right?

20         THE DEFENDANT:  I was only told that he was

21  going to be taken to where the government puts them and

22  that he was going to be okay.  That's all I was told.

23         THE COURT:  All right.  Just what I'm saying

24  is, you're going to have an attorney represent you on

25  these charges.  I'm appointing you an attorney.  Discuss

1    this issue about your child with the attorney, and your
2    attorney may be able to render some assistance to you in
3    terms of trying to just get some information on your
4    child, where they are and how they're doing, okay?
5              I'm sure it's a very --
6              THE DEFENDANT:  Yes, because that's what I'm
7    worried about because -- not knowing anything about
8    him.
9              THE COURT:  I would be very worried as well if
10   it was me.  So I understand your worry and I understand
11   your frustration.
12             Hopefully, your attorney can help you out,
13   okay?
14             THE DEFENDANT:  Okay.
15             THE COURT:  I'm appointing the office of the
16   Federal Public Defender to represent you in this case.
17   The Office of the Federal Public Defender is a lawyers'
18   office of about 20 lawyers.  One individual lawyer from
19   that office will be designated by that office to be your
20   attorney and will be by to see you here in the next day
21   or two.  Actually, I wouldn't be see surprise if they
22   saw you tomorrow sometime.
23             Have you understood everything I've said,
24   Ms. Vasquez?
25             THE DEFENDANT:  Yes.

Dominguez-Portillo [8]

1   that document are that they list the date of your

2   alleged offense, okay -- and you are just accused at

3   this time -- the date of your alleged offense, the place

4   of your alleged offense, and there is an affidavit sworn

5   to by one of the agents involved in your case that

6   describes and details the facts in support of this

7   allegation by the government.  Of course, it's an

8   allegation and you do have the right to contest it.

9          Your attorney will answer all of these

10  questions for you.

11         Now, have all -- is there -- have all of you

12  understood everything I've just discussed with you?

13         (All respond "Yes")

14         THE COURT:  Okay.  Is there anybody here that

15  did not understand something that I just went over with

16  you?  Anybody?

17         (No response)

18         THE COURT:  Is there also anybody in this group

19  that was accompanied by either their minor child or a

20  minor sibling?  Somebody below the age of 18.  Anybody

21  in the group?

22         (No response)

23         THE COURT:  I mean, a relative is what I'm

24  talking about.

25         Ma'am -- and it's Ms. -- let me have just a

1  moment -- Ms. Dominguez-Portillo.  May I ask you, who

2  was accompanying you?

3          THE DEFENDANT:  My daughter.

4          THE COURT:  How old is she?

5          THE DEFENDANT:  16.

6          THE COURT:  May I ask you her name?

7          THE DEFENDANT:  Jocelyn Paola.

8          THE COURT:  Dominguez also?

9          THE DEFENDANT:  Luna-Dominguez.

10         THE COURT:  Luna-Dominguez.

11         THE COURT:  When you were arrested, at the time

12  of your separation, were you provided any information as

13  to how to find out about her whereabouts or her

14  well-being?

15         THE DEFENDANT:  No.  They did not want to tell

16  me.

17         THE COURT:  They didn't give you any paperwork?

18         THE DEFENDANT:  No.

19         THE COURT:  Well, ma'am, please, discuss this

20  with your attorney, okay?  And your attorney may be able

21  to assist you in at least finding out some basic

22  information about where she is.  Okay.  Is there

23  anybody -- just make sure you discuss that with your

24  attorney when your attorney goes out to see you,

25  Mr. Carmona.

```
1            Anybody else like Ms. Dominguez, who was
2   accompanied by a minor child or a minor sibling?
3   Anybody?
4           (No response)
5           THE COURT:  Okay.  Very well.  Then, you will
6   be meeting with your attorney in the very near future.
7   Hopefully, this week.  Your attorney will explain to you
8   in detail everything that we've discussed today.
9           In a few minutes, you will receive written
10  notice that your hearing has been set.  This written
11  notice will contain the name and contact information of
12  your lawyer should you need to reach your lawyer before
13  they go out to visit.
14          At this point, I'll turn you over to the
15  custody of the U.S. Marshals.  We're in recess.
16          (Proceedings concluded)
17
18
19
20
21
22
23
24
25
```

1                    CERTIFICATE OF ELECTRONIC RECORDING

2

3              I, Rhonda McCay, CSR, RPR, certify that the

4    foregoing is a correct transcription from the electronic

5    recording of the proceedings in the above-entitled

6    matter.

7              I further certify that I am neither counsel

8    for, related to, nor employed by any of the parties to

9    the action in which this electronic recording was taken,

10   and further that I am not financially or otherwise

11   interested in the outcome of the action.

12             Signed this 7th day of November, 2017.

13

14

15   /s/ Rhonda McCay_____
     Rhonda McCay, RPR, CSR 4457
16   Date of Expiration:  12/31/2018
     REPORTERS INK, LLC
17   221 North Kansas, Suite 1101
     El Paso, Texas 79901
18   Ph.: 915.544.1515

19

20

21

22

23

24

25

Yanes Mancia 10

```
 1              All right.  And those of you that are standing,
 2    you can have a seat, please.
 3              (Proceedings continued but are not made a part
 4    of this record)
 5              THE COURT:  All of you will be meeting with
 6    your attorney in the very near future.  Your attorney
 7    will discuss in detail everything that we've talked
 8    about today.
 9              In a few minutes, you're going to receive
10    written notice that your case has been set for the next
11    court hearing, and this written notice will contain the
12    name and the contact information for your attorney.
13              Let me ask you, those of you that are actually
14    sitting against the wall over here that have the charges
15    of illegal entry, is there anybody in this group right
16    here that was accompanied by a minor child or a minor
17    sibling?
18              (Proceedings continued but are not made a part
19    of this record)
20              THE COURT:  Mr. Yanes?
21              THE DEFENDANT:  Yes.
22              THE COURT:  Mr. Yanes, you were accompanied --
23    don't tell me the name, but you were accompanied by a
24    minor child of yours?
25              THE DEFENDANT:  Yes.
```

```
1              THE COURT:  How old is that child?
2              THE DEFENDANT:  He was about to turn 15 on the
3   3rd of October.
4              THE COURT:  And it's a boy?
5              THE DEFENDANT:  Yes, he is a boy.
6              THE COURT:  Okay.  Again, were you given any
7   information at the time of your arrest about how -- how
8   to contact authorities about the whereabouts or the
9   well-being of your child?
10             THE DEFENDANT:  No.  They did not give me --
11  they just -- they just said they were going to take him
12  to an institution for children.  In fact, I have with me
13  an address of my brother that is here.
14             THE COURT:  Go ahead.
15             THE DEFENDANT:  But an officer came by and took
16  that, where I had the address written down and -- when I
17  was laying down with my son, and I have nothing now.
18  They took it away and kept it, and I have nothing now to
19  be able to contact them.
20             THE COURT:  Okay.  And you're from Honduras,
21  Mr. Yanes?
22             THE DEFENDANT:  Yes.  From Honduras.
23             THE COURT:  Thank you, sir.
24             THE DEFENDANT:  I'm from Copaneco [phonetic],
25  Honduras.
```

```
1            THE COURT:  Okay.  Thank you, sir.  You can
2   have a seat.
3            (Proceedings continued but are not made a part
4   of this record)
5            THE COURT:  For those of you that I just talked
6   to about being accompanied by your children or
7   grandchildren, make sure you discuss it with your
8   attorney, please, and your attorney may be able to
9   assist you in getting some information about the
10  whereabouts and well-being of your children.
11           All right.  We're in recess.  You're in the
12  custody of the U.S. Marshals.
13           (Deposition concluded)
14
15
16
17
18
19
20
21
22
23
24
25
```

*Claudino Lopez* 11

1  here that was accompanied by a minor child or a minor

2  sibling?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Mr. Claudino, without telling me

5  the name of your child, how old is your -- or who were

6  you accompanied by?

7          THE DEFENDANT:  An 11-year-old boy.

8          THE COURT:  Is this boy your child?

9          THE DEFENDANT:  My son, yes.

10          THE COURT:  And you were separated at the time

11  of your arrest; is that correct?

12          THE DEFENDANT:  Yes, we were separated.

13          THE COURT:  Let me have a moment.  Hold on one

14  second.  Rita, let me see you real quick.

15          (Discussion off the record)

16          THE COURT:  Sir, Claudino is your last name?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Mr. Claudino, so your 11-year-old

19  son was with you; is that correct?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And, obviously, he was taken by

22  somebody else at the time that you were arrested; is

23  that correct?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Were you given any information by

```
1   agents at the time of your arrest as to how to -- as to
2   how to contact the authorities who are keeping your son?
3              The DEFENDANT:  They gave me some copies.
4              THE COURT:  So you were given some documents?
5              THE DEFENDANT:  Yes.
6              THE COURT:  Okay.  These documents related to
7   how to contact your son?
8              THE DEFENDANT:  No.
9              THE COURT:  Were you given any information on
10  how to find out the whereabouts or the well-being of
11  your son?
12             THE DEFENDANT:  They just told me that he was
13  over there with children.
14             THE COURT:  Did anybody give you any
15  information that would tell you exactly how to contact
16  either your child or a legal representative of your
17  child or that -- or that residence facility?
18             THE DEFENDANT:  No.
19             THE COURT:  Okay.
20             THE INTERPRETER:  The defendant would like to
21  say something, Your Honor?
22             THE COURT:  Yes, sir.  Go ahead.  Go ahead.
23             THE DEFENDANT:  They asked me for the address
24  of one of my brother's living in Los Angeles.  They told
25  me that maybe they could hand him over to him.
```

```
1              THE COURT:  Okay.  Okay?
2              THE DEFENDANT:  Thank you.
3              THE COURT:  And was this the Border Patrol or
4    the folks -- the people that took your child at the
5    time?
6              THE DEFENDANT:  Border Patrol.
7              THE COURT:  All right, sir.  Thank you very
8    much.  You can have a seat.
9              (Proceedings continued but are not made a part
10   of this record)
11             THE COURT:  For those of you that I just talked
12   to about being accompanied by your children or
13   grandchildren, make sure you discuss it with your
14   attorney, please, and your attorney may be able to
15   assist you in getting some information about the
16   whereabouts and well-being of your children.
17             All right.  We're in recess.  You're in the
18   custody of the U.S. Marshals.
19             (Proceedings concluded)
20
21
22
23
24
25
```

1   the agents from having to put on those cases, and we also

2   recognize that the cases could have continued into next week as

3   well, and we also note that other individuals in their position

4   who are apprehended around that time most of them were

5   sentenced to time served probably about a month ago.

6       It has been our position which we communicated to Defense

7   counsel as of November 9th that a time served sentence was

8   appropriate so, given that, we continue to recommend a sentence

9   of time served.

10          THE COURT:  I appreciate it, thank you.  Okay, let me

11   go now to you all.

12      Ms. Dominguez-Portillo, before I impose sentence, is there

13   anything you would like to tell the Court?

14          DEFENDANT DOMINGUEZ:  Yes, Your Honor.

15      When I arrived here, I had my daughter with me, and up to

16   this day today, I know nothing of her.  I came here fleeing

17   from the Maras, and I ask I want to go back with my daughter as

18   soon as possible.  That's all.

19          THE COURT:  Thank you, ma'am.

20      Mr. Claudino Lopez, before I impose sentence, is there

21   anything you would like to say, sir?

22          DEFENDANT CLAUDINO:  Well, I came into the country,

23   and I gave myself up to the officers of immigration, and I only

24   came here to see if I could have a better life for my son.  It

25   was not possible.  The only thing that I want now is to go back

1   to my country with my son as soon as possible.

2       I do have more.  I want to thank the immigration officer

3   because they treated me very well.  I know that they are all

4   here present this afternoon, and with me they all behaved very

5   well, and I thank them again, and I apologize to them.

6           THE COURT:  Thank you very much, sir.

7       Mr. Yanes, before I impose sentence, is there anything you

8   would like to tell the Court, sir?

9           DEFENDANT YANES:  Yes.  I am in the same situation as

10  they are, and I do want to apologize for what we did for coming

11  into this country illegally.  I am in the same situation as

12  they are, and I do want to apologize for coming in the way we

13  did.  I was coming with my son to give him a better opportunity

14  and to be able to study, and I wanted to work here, you know,

15  to be able to support him, but I was not able to, and I

16  apologize for being here and for everything we have done.  I

17  think we are all paying for this offense which we have

18  committed.

19      Likewise, I have been very well treated by everybody here,

20  and I do apologize for having come in the way that I did.  I do

21  apologize.  I do want to know about the whereabouts of my son.

22  I want to know if he is okay, and I want to take him back to my

23  country of Honduras.

24      Thank you.

25          THE COURT:  Thank you, Mr. Yanes.

1          Ms. Zavala, before I impose sentence --

2          DEFENDANT ZAVALA:  Your Honor, I fled the violence in

3    my country.  I fled the danger and the violence.  I came here

4    with my grandson.  I need to be with my grandson.  He was taken

5    from me.  I don't know where he is.  Your Honor, I need to go

6    with my grandson.  I need to go back.  I need to know where he

7    is.  He was taken from me.  I know nothing of him.  I need to

8    know where my grandson is.  It is all I ask, to be with my

9    grandson and to go back with my grandson.  I know nothing about

10   him.

11         THE COURT:  Thank you, Ms. Zavala.

12         Before I impose sentence Ms. Vasquez-Hernandez, is there

13   anything you would like to tell the Court?

14         DEFENDANT VASQUEZ:  Good afternoon, Your Honor.

15   What I would ask is I came over here with my son.  I know

16   nothing of him.  He was taken from me.  I was told that he was

17   going to be taken.  I came here fleeing the danger in my

18   country.  My husband was killed.  As I was telling you, my

19   husband was killed.

20         I came here seeking a better life.  I'm a single mother,

21   and I was fleeing the dangers and the violence in my country.

22   I only want to raise my son to see him grow up where there are

23   no Maras, no gangs.  I am now a widow without a husband.  I

24   lost everything.  Please help me.  I don't know where my son

25   is.  From the moment he was taken from me, I don't know

1   anything about him.

2       Likewise, when I gave myself in to immigration, they took

3   my son away from me.  They cuffed him.  He is a 13 year-old

4   little boy.  He was cuffed and taken away.  I worry about him.

5   I don't know how he is treated if he is being well treated.

6   All I ask -- I don't know where he is and he needs me.  I need

7   to go and be where he is.

8           THE COURT:  Thank you very much, Ms. Vasquez.

9   Alright --

10          MR. GARCIA:  Judge?

11          THE COURT:  Yes, sir.

12          MR. GARCIA:  If I could -- my heart tells me to say a

13  few words just briefly, maybe 30 seconds, Judge.

14          THE COURT:  Go right ahead.

15          MR. GARCIA:  As you heard the Government say, they

16  spent resources and they made an offer back earlier, but, as

17  you can see, the concern of my clients is simply their

18  children.  That is the most precious thing they had, and that

19  is their concern.

20      It is not a time served issue.  It is where is my child?

21  That is the question.  That's the reason why we went to trial

22  because it is incorrect.  It is wrong.  We are missing those

23  children.  We don't know where they are.  The Government knows.

24  They have them.  We don't.  Certainly my clients don't know.

25      Thank you, Judge.



```
 1  your -- your opposed.  So let me hear why.  And whoever

 2  wants to address that can address that.

 3            MS. FRANCO-GREGORY:  Your Honor, the

 4  government, on November 9th, reached out to Mr. Garcia

 5  and advised him that the government was offering a

 6  sentence of time served.

 7            THE COURT:  Right.

 8            MS. FRANCO-GREGORY:  Mr. Garcia never responded

 9  to the government.  We sent a follow-up e-mail on

10  November 17th.  Again, he didn't respond.  And the first

11  response we have is actually later that evening, on

12  November the 17th.

13            THE COURT:  Okay.

14            MS. FRANCO-GREGORY:  As such, the government

15  followed up with a motion.

16            The government is very concerned that these

17  defendants have not been arraigned.  And so, at the

18  minimum, we would ask that they be arraigned so that

19  they can enter the plea of guilty or not guilty.

20            THE COURT:  All right.  And let me have a

21  second.  I'm looking at your motion.

22            Okay.  And you didn't raise the issue of the

23  arraignment in your motion; is that correct?

24            MS. FRANCO-GREGORY:  In our response, Your

25  Honor, there is a reference to it.
```

1            No, not in the -- the motion, Your Honor.

2            THE COURT:  And what response?

3            I'm -- I'm looking at your motion for a hearing

4    for the *Lafler Frye*.  I mean, one of the things that I

5    did when I set -- when I set it for -- for the hearing,

6    when I granted your motion, was to go ahead and set

7    it -- have a trial date set, and that's in the order.

8            But I guess what I'm asking you is -- so

9    that -- that issue -- you're raising that issue of the

10   arraignment today, and -- and you haven't previously

11   addressed that with the Court, right?

12           MS. FRANCO-GREGORY:  We raised it in our

13   response, and we raised it --

14           THE COURT:  In what response, though?  I'm not

15   sure --

16           MS. FRANCO-GREGORY:  We have raised it in our

17   motion for the hearing, where we stated that no

18   arraignment or further hearings have been scheduled at

19   this time.

20           THE COURT:  Okay.

21           MS. FRANCO-GREGORY:  And we also have raised it

22   in the government's response to the defendant's motion

23   to dismiss.

24           THE COURT:  Let me have just a second here.  Do

25   you have any response after that?

```
 1            MR. GARCIA:  I'm looking at the motion, Judge.
 2   I didn't -- I didn't see that issue raised --
 3            MS. FRANCO-GREGORY:  It's on page 1, the last
 4   sentence.
 5            THE COURT:  Right.  I see it.  Okay.
 6            Okay.  I'm just -- I'm looking at Rule 10, in
 7   terms of the arraignment, I mean...
 8            Well, let me ask you this, Ms. Franco:  What do
 9   you suggest as to the arraignment concern?  I mean,
10   we're set for a trial, but -- and we have a date
11   certain.  But as to the arraignment on misdemeanor
12   charges, what is your suggestion?
13            MS. FRANCO-GREGORY:  Your Honor, we haven't
14   received notice of the trial setting.
15            THE COURT:  It -- I included in the -- in my
16   order granting the -- the Frye Lafler hearing, granting
17   today's hearing, it's in there, and they're set for next
18   Friday.
19            But, I mean, that still leaves the question --
20   and, obviously, a valid question -- about arraigning.
21   We don't ordinarily arraign these in -- in -- in -- or
22   we have the rearraignment set early on.  But if we need
23   to set it, what do you suggest?  I mean...
24            MS. FRANCO-GREGORY:  I suggest that the
25   defendants be arraigned, Your Honor, since they haven't
```

```
 1  had the opportunity.

 2           THE COURT:  And take advantage of that today?

 3           MS. FRANCO-GREGORY:  Yes, Your Honor.

 4           THE COURT:  All right.  Do you have any -- any

 5  issue with that?  Do you want to confer?  We can take a

 6  five-minute recess, and -- and -- I mean, this is --

 7  this really talks about misdemeanor information, and if

 8  you read Rule 10 -- but, I mean, if we want to go ahead

 9  and get an arraignment on the record, and they can enter

10  a plea, I mean, we can -- it's a concern that the

11  government's had.  I don't necessarily disagree with

12  that.

13           MR. GARCIA:  Yeah.  Let me take a minute,

14  Judge, so I can confer with my clients.  Is that okay,

15  like, five minutes?  I need -- I need to talk to them.

16           THE COURT:  Okay.  Just if we do that.

17           And -- and I will say this, that before we do

18  that, that I'm inclined to grant your continuance on

19  this so that -- I mean, you need to talk to your

20  clients, and -- but I understand what the government's

21  concern was.  I think we can address the concern about

22  the arraignment.

23           We already have a date certain on the trials

24  in -- in the case, but we can take care of the

25  arraignment issue, which I am looking -- just
```

1  notice-wise, I think if we inform them of what the

2  charges are and whether it's a plea of guilty or not

3  guilty, I think -- I, actually, am looking at the rule.

4  You -- can waive them also, if you wish.  So it's up to

5  you.  I'll give you some time to do that.

6          But just so the parties know, I am

7  inclined to --

8          MR. GARCIA:  Okay, Judge.

9          THE COURT:  -- to grant a continuance --

10         MR. GARCIA:  All right.

11         THE COURT:  -- so that you're able to confer

12  with your clients on the larger matter.

13         Before I do that, I am curious, does the

14  government -- was the government intending on presenting

15  any witnesses as part of the -- the hearing, as part of

16  what I had indicated that we would be having, an

17  evidentiary hearing, just to afford the parties the

18  opportunity to present any witnesses or testimony?

19  Did -- was the government -- were you doing that today?

20         Here's -- here's the thing, because one of the

21  things I would consider in granting any kind of

22  continuance is if you have two or three people here that

23  had to take the day off and come down here.  I mean,

24  obviously, I would want to accommodate them and not

25  inconvenience them, if that was the case.  But if we

```
 1   don't have any -- anybody, I mean, that's -- that's a
 2   different matter.
 3              MS. FRANCO-GREGORY:  No, we don't, Your
 4   Honor.
 5              THE COURT:  Okay.  Very well.
 6              Why don't we take about five minutes --
 7              MR. GARCIA:  Thank you, Judge.
 8              THE COURT:  -- if that works.  If you need a
 9   little bit more time, and then we'll come back.
10              And I think -- I think we can just take that up
11   and I can inform all five of them what the arraignment
12   is.
13              MR. GARCIA:  Yeah.
14              THE COURT:  And I don't see any specific notice
15   requirements.  I mean, they've been charged by complaint
16   since late last month, so -- okay.  We'll -- we'll take
17   a few minutes for recess.
18              MR. GARCIA:  Thank you, Judge.
19              (Recess taken from 9:45 a.m. to 10:00 a.m.)
20              THE COURT:  We're back on the record on the
21   cases we called earlier.
22              You know, one question that I have about this
23   rule.  So Rule 10 talk -- talks about arraignments.  It
24   talks about arraignments when people are charged by --
25   and it talks about misdemeanors -- but when they're
```

1  charged by either indictment, of course applies to

2  felony, or information and misdemeanor information.

3  Here, they are charged by complaint.

4       I would imagine, I mean, kind of taking a

5  liberal view of that rule, is that it's -- if they are

6  charged by complaint, it's -- it's analogous to being

7  charged by an information.  It's just a charge made by

8  the government.  It's not presented because it doesn't

9  have to be presented to grand jury.  And it comes down

10 to this:  It's the waiver form, which only -- which

11 mirrors the language in Rule 10 which talks about

12 indictment or information if you're going to waive the

13 hearing.  And it talks about "A defendant has received a

14 copy of the indictment or information."

15       I mean, is it okay to -- to modify that or just

16 say that it has been -- has received a copy of the

17 complaint in this case?  What -- what are your thoughts,

18 Counsel?

19       MS. FRANCO-GREGORY:  Your Honor, I think that

20 that would be fine.  The government's concern, as I just

21 mentioned to defense counsel --

22       THE COURT:  Uh-huh.

23       MS. FRANCO-GREGORY:  -- is that these

24 individuals have been in jail for over a month.

25       THE COURT:  Uh-huh.

```
 1            MS. FRANCO-GREGORY:  And they haven't had the
 2   opportunity to be -- to appear before the Court.
 3            THE COURT:  Well, at the initial.
 4            MS. FRANCO-GREGORY:  And so as far as to enter
 5   their plea of guilty or not guilty.  And I know they've
 6   articulated that through defense counsel.
 7            THE COURT:  Uh-huh.
 8            MS. FRANCO-GREGORY:  But the government just
 9   re-urges that they're very, very concerned that these
10   people have been sitting in jail for this length of
11   time.
12            And so we -- we thought the arraignment would
13   be a mechanism to at least allow them the opportunity to
14   enter their plea of guilty or not guilty.
15            THE COURT:  Right.
16            MS. FRANCO-GREGORY:  And so the government
17   would have no objection to modifying the language to
18   include "complaint."
19            THE COURT:  Right.
20            MS. FRANCO-GREGORY:  There is a different --
21   I -- I apologize, Your Honor.
22            THE COURT:  No.  And I'm sorry.
23            And let me just say, and I understand that -- I
24   mean, this is what you're driving at -- it's the whole
25   purpose behind the motion you filed on Friday -- to get
```

1    them on the record to say whether or not, you know,

2    they -- they want to plead guilty or not, okay?

3            I mean -- and that's really what you need to

4    have a conversation with your clients about.

5            Still, I mean, a *Frye Lafler* thing is a

6    separate proceeding from -- from an arraignment.

7            Do you have any trouble with that, just

8    modifying the --

9            MR. GARCIA:  No.  I mean, we -- if -- if -- if

10   we modified in the way that we usually do with -- with

11   the informations and with the indictments where the

12   clients sign the waiver, and I don't think I have any

13   problem with that, Judge.

14           THE COURT:  I mean, it's just like a regular

15   waiver of arraignment, is --

16           MR. GARCIA:  Yeah.

17           THE COURT:  -- was my thought.

18           MR. GARCIA:  We'll waive.

19           And -- and just to respond to the government's

20   concern --

21           THE COURT:  Uh-huh.

22           MR. GARCIA:  -- they are concerned that they've

23   been sitting here for a month.

24           THE COURT:  Yes.

25           MR. GARCIA:  But if they were truly concerned,

1  they would have sent these -- these parents with

2  their -- with their kids, and they wouldn't have any

3  concerns.

4          My concern is that they filed a Sixth Amendment

5  *Frye Lafler* hearing, and so I need to talk to these

6  individuals individually, thoroughly explain to them the

7  offer from the government --

8          THE COURT:  Uh-huh.

9          MR. GARCIA:  -- and just to make sure that

10  they're getting an effective assistance of counsel,

11  because let's remember that that claim, it's on the

12  federal defenders office.  It's not on the

13  government's.

14          THE COURT:  I understand.

15          MR. GARCIA:  So we need to be extra careful.

16          THE COURT:  And that's -- so here's what I'm

17  inclined to do, then:  Let's -- I mean, there doesn't

18  appear to be any -- any controversy about saying that

19  the -- or about modifying the waiver of arraignment

20  to -- to include that -- that they have been notified as

21  to their charge regarding a complaint.  And I would like

22  to afford you time to -- because what you've indicated

23  is, in your motion, that you've had some trouble, for

24  different reasons.  And, yes, I mean, they put them in

25  different jails or whatever.  They've been here since

```
 1    yesterday, I think.  But I would -- if we are going to
 2    have that hearing, I'd like to have it sooner rather
 3    than later.
 4              MR. GARCIA:  Yeah.  No, absolutely.
 5              THE COURT:  And -- and so, you know, again,
 6    presuming a little bit, but you may be available to talk
 7    to them today.  My inclination is to have that hearing,
 8    which I've already granted the motions on, to have it on
 9    Monday, okay?
10              And maybe the marshals can keep these folks
11    here.  They're here in El Paso County --
12              MR. GARCIA:  They -- they just got moved here
13    to El Paso.
14              And, Judge, I don't have any problem with
15    Monday.
16              THE COURT:  Uh-huh.
17              MR. GARCIA:  I know I've requested on my motion
18    on Wednesday --
19              THE COURT:  Till Wednesday, yeah.
20              MR. GARCIA:  If we could do Tuesday.  The only
21    reason why I say that is because my investigator is out.
22    She's -- she's gone because of the holiday season.
23    She's out.  And -- and she's has been working with me on
24    these cases --
25              THE COURT:  Okay.
```

1          MR. GARCIA:  -- and she's out of town.  I think

2   she's actually out of the country.

3          So Tuesday is -- that would be perfect.  We'll

4   be here at 9:30, if that's what the Court wants.

5          THE COURT:  And what does the government say?

6          MS. FRANCO-GREGORY:  And, Your Honor, for the

7   record, the government would object to that.

8          These defendants, I understand defense counsel

9   hasn't been able to get to them within a month, but they

10  have been sitting here in custody for -- some of them

11  over a month.  And now they're going to sit through the

12  holiday weekend.  The government would urge that the

13  Court set this as soon as possible.

14         And I understand that the investigator has been

15  working with Mr. Garcia, but I -- I do -- I re-urge that

16  these -- these people have been in custody.  Mr. Garcia,

17  I know, couldn't report or communicate with them sooner.

18  But a month seems as an ample amount of opportunity to

19  go talk to these individuals.  Our offer was made on

20  November the 7th, Your Honor.

21         MR. GARCIA:  And I think we can resolve this,

22  Judge, on -- on Tuesday.  I mean, especially if -- if --

23  if there's not going to be -- my argument is a novel

24  argument, it's a first-impression type of argument, and

25  it's a question of law.  And so I think the Court has

```
 1   enough to make a decision with the briefs --
 2           THE COURT:  Hold on one second.
 3           All right.
 4           MR. GARCIA:  To make a decision on the briefs
 5   and maybe just reserving the time on Tuesday to address
 6   the Lafler Frye hearing and also the merits of the
 7   motion to dismiss, if that's what the Court decides.
 8           THE COURT:  You know, I think, given that they
 9   are here today, that they are available, and that they
10   are here in town, that Monday --
11           MR. GARCIA:  Okay.
12           THE COURT:  -- is sufficient amount of time.
13           And -- and so on Monday, then, we have -- I'm
14   not moving any trial date that's already previously
15   scheduled.  Then, on Monday, we will take up the matter
16   raised by the government, the Lafler Frye hearing, to
17   see whether they are accepting any plea agreements.
18           As I mentioned in my order, also, if there's
19   going to be change of plea from any of the defendants,
20   we will go through it at that time, okay?  And -- and
21   then, obviously, if -- if you want to put anything on
22   the record, any -- any -- on your motion to dismiss,
23   which is also pending, and the government's response,
24   you know, we can -- we can take up a small amount of
25   time for basically argument and some questions from the
```

1  and I am a little bit troubled that by the time of their pleas
2  they don't have this information, and I certainly had
3  communicated in the past sometimes with defendants who say that
4  their whole goal is to reunite with their kids or find
5  something out about their kids. It is an anxiety that looms
6  large.  I don't think there is a lot of reason to doubt the
7  sincerity of those expressions in most cases.
8      Here is what I would like to do.  I am going to ask the
9  parties -- I am going to issue a specific, and it is not going
10  to be a long order, asking the parties to brief some issues
11  that hopefully can answer some of these questions.  I am going
12  to reset this case for a status conference for next week.
13  Thursday is what I am thinking.  I will talk to the parties
14  about that in a second to see what their availability is, but
15  basically, at that point, we can see where we are whether there
16  is a plea at that time or a request for trial or whatever.
17      I just would like to get the parties positions, and this is
18  why we have -- I have taken the individual step of appointing
19  the Office of the Federal Public Defenders in this case.  They
20  are not subject to even some of the limitations that we have
21  with a CJA panel and even in terms of what is authorized
22  specifically in terms of how many hours they can bill, et
23  cetera.  I thought I am not going to get into that jam.  I am
24  going to ask the Public Defender to do this.  I appreciate the
25  Office of the Federal Public Defender assisting us in these